## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | | |
|---|---|---|
| TAMMY BERRY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:20-CV-890 RLW |
| | ) | |
| KILOLO KIJAKAZI, | ) | |
| Acting Commissioner of Social Security,[1] | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

Plaintiff Tammy Berry ('Plaintiff') brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the Commissioner's final decision denying her application for Supplemental Security Income ("SSI") under Title XVI of the Act, 42 U.S.C. §§ 1381, et seq. The Court has reviewed the parties' briefs and the administrative record, including the transcripts and medical evidence. For the reasons that follow, the Court will reverse the decision and remand for further proceedings.

### I. Procedural History

Plaintiff protectively filed an application for SSI on June 14, 2017.[2] (Tr. 12, 160-65). Plaintiff alleged she had been unable to work since August 1, 2016, due to schizoaffective disorder, bi-polar disorder, and "manic with psychosis." (Tr. 168, 169). Plaintiff's application was denied on initial consideration on November 29, 2017 (Tr. 80-85). She requested a hearing before an Administrative Law Judge ("ALJ") on January 24, 2018. Plaintiff appeared with counsel and testified at hearing on

---

[1]Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. She is substituted for former Defendant Andrew Saul. See Rule 25(d), Fed. R. Civ. P.

[2]Plaintiff also filed an application on June 14, 2017, for Disability Income Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401 et seq. (Tr. 158-59). There is no further information in the record concerning Plaintiff's DIB application.

April 30, 2019.  (Tr. 32-62).   Plaintiff testified concerning her disability, mental and physical conditions, daily activities, functional limitations, and past work. (Id.)   The ALJ also received testimony from vocational expert ("VE") Delores Gonzalez. (Id.) The ALJ issued an unfavorable decision on September 4, 2019, finding Plaintiff was not disabled.  (Tr. 9-30).  Plaintiff filed a request for review of the ALJ's decision with the Appeals Council in October 2019. (Tr. 153-54). The Appeals Council denied Plaintiff's request for review on May 12, 2020. (Tr. 1-5).  Plaintiff has exhausted her administrative remedies, and the ALJ's decision stands as the final decision of the Commissioner subject to judicial review.  See 42 U.S.C. §§ 405(g), 1383(c)(3).

In this action for judicial review, Plaintiff claims the ALJ's decision is not supported by substantial evidence on the record as a whole.  Specifically, Plaintiff argues the ALJ's determination of her residual functional capacity is not supported by some medical evidence.  Plaintiff requests that the decision of the Commissioner be reversed and that she be awarded benefits.

## II.  Medical Records and Other Evidence Before the ALJ

On September 30, 2015, Plaintiff was admitted to Poplar Bluff Regional Medical Center with the chief complaint of paranoia.[3]  She was forty-three years old at the time.  Plaintiff had been brought to St. Genevieve County Memorial Hospital by the police for a 96-hour psychiatric evaluation. Plaintiff was very paranoid, had episodes of disturbing her neighbors and the peace, and had been evaluated in the emergency room.  She was subsequently transferred to the behavioral health unit for further inpatient psychiatric evaluation and treatment.  The admitting impression was acute psychosis and active tobacco abuse.  Psychiatric progress notes from October 1, 2015, document an assessment of bipolar disorder, and indicate Plaintiff was paranoid and agitated and had not been sleeping for a long time.   Plaintiff was prescribed Haldol, Cogentin, and Vistaril. The psychiatric discharge

---

[3]The ALJ's Decision incorrectly states that Plaintiff's admission occurred on June 18, 2017. (Tr. 19).

summary from October 14, 2015, noted a principal diagnosis of bipolar disorder and a secondary diagnosis of substance dependence. Plaintiff was to follow up with outpatient psychiatry. She was on a police hold as a result of several warrants and had to return to jail from her discharge.

Plaintiff filed an application for SSI benefits in June 2017. Plaintiff completed a disability report indicating that she lived with her parents; she had the medical conditions of schizoaffective disorder, bipolar disorder, and manic with psychosis; she had worked as a cashier, machine operator, and welder; and she had been let go from work in August 2016 because she was hearing voices.

Plaintiff was seen at Mercy Hospital Jefferson in June 2017 for a psychological evaluation. She was brought in by law enforcement with affidavits for a 96-hour hold on a court order due to psychosis and mania. The clinical impressions and final diagnoses were bipolar affective disorder, current episode manic with psychotic symptoms. The 96-hour petition was completed by Plaintiff's father, who indicated she had been paranoid and thinking all electronic devices had been hacked; she recently had cut off power to her residence twice; in mid-May she walked into traffic challenging cars to strike her; and on June 4 she called to threaten that she would cut her father's throat.

Plaintiff's father filed letters of guardianship of an incapacitated person and conservatorship of a disabled person in June 2017 in the 24th Judicial Circuit Court, St. Genevieve County, Missouri, and was appointed Plaintiff's guardian and the conservator of her estate on June 12, 2017.

Plaintiff was discharged from Mercy Hospital Jefferson on July 15, 2017, to Westview Nursing Home, a secure facility, as a Medicaid patient. Plaintiff remained in the secure nursing facility until she was discharged on August 15, 2017.

Plaintiff completed the Work History Report indicating additional jobs of cashier, waitress, and hairstylist. In July 2017, Plaintiff further reported that she used to run her own hair salon but was unable to fully manage the day-to-day tasks of the salon due to recurrent illnesses, and she was unable to complete those tasks. Plaintiff completed a Function Report on July 31, 2017,

After leaving the nursing facility in August 2017, Plaintiff reestablished psychiatric care and received regular Risperdal Consta injections at COMTREA Community Health Services.  Plaintiff was also seen at Washington County Memorial Hospital Medical System for medication management and psychotherapy.  In February 2018, Plaintiff noted side effects from the injections and was prescribed Risperidone pills in place of the injections.  Plaintiff saw a counselor, Melinda Fox, LCSW, for individual therapy sessions on numerous occasions beginning in February 2018 and continuing until the time of the hearing in April 2019.

Plaintiff was also treated by psychiatrist Dr. Patrick Oruwari at Washington County Memorial Hospital Medical Services.  Plaintiff she refused a urine drug screen at an appointment on October 1, 2018.  Treatment notes from that visit indicate Plaintiff's demeanor went through emotional changes from anger to tearfulness, delaying, playing the victim, condescending remarks, and threats to leave. Plaintiff angrily confessed to what seemed like the use of marijuana, and it was noted she had failed the drug test in the past.  Plaintiff was to be discharged from the clinic because of her noncompliance with office policy requiring the urine drug screen.  Plaintiff was noted positive for irritability, combativeness, mood swings, and psychiatric symptoms.  The assessment was bipolar disorder, current episode mixed, severe, without psychotic features, improved; generalized anxiety disorder, improved; and marijuana smoker.

With respect to medical records and other evidence of record, the Court adopts Plaintiff's recitation of facts set forth in her Statement of Uncontroverted Facts (ECF 14-1) as admitted by the Commissioner with clarification (ECF 22-1).  This Statement provides a fair and accurate description of the relevant record before the Court.  Additional specific facts are discussed as needed to address the parties' arguments.

### III.  Legal Standard

To be eligible for SSI under the Social Security Act, a plaintiff must prove that she is disabled. Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001); Baker v. Sec'y of Health & Human Servs., 955 F.2d 552, 555 (8th Cir. 1992).  The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  An individual will be declared disabled "only if his [or her] physical or mental impairment or impairments are of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process.  See 20 C.F.R. §§ 404.1520, 416.920; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).  The Commissioner begins by deciding whether the claimant is engaged in substantial gainful activity.  If the claimant is working, disability benefits are denied.  Second, the Commissioner decides whether the claimant has a "severe" impairment or combination of impairments, meaning that which significantly limits his or her ability to do basic work activities.  If the claimant's impairment is not severe, then he or she is not disabled.  Third, if the claimant has a severe impairment, the Commissioner considers the impairment's medical severity.  If the impairment meets or equals one of the presumptively disabling impairments listed in 20 C.F.R., Part 404, Subpart P, Appendix 1, the claimant is considered disabled, regardless of age, education, and work experience.  20 C.F.R. §§ 416.920(a)(4)(iii), (d).

At the fourth step, if the claimant's impairment is severe but it does not meet or equal one of the presumptively disabling impairments, the Commissioner assesses whether the claimant retains the

"residual functional capacity" ("RFC") to perform his or her past relevant work.  20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(5)(i).  An RFC is "defined as the most a claimant can still do despite his or her physical or mental limitations." Martise v. Astrue, 641 F.3d 909, 923 (8th Cir. 2011); see also 20 C.F.R. § 416.945(a)(1). Ultimately, the claimant is responsible for providing evidence relating to her RFC, and the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 416.945(a)(3).  If, upon the findings of the ALJ, it is determined the claimant retains the RFC to perform past relevant work, she is not disabled.  20 C.F.R. § 416.920(a)(4)(iv).

In the fifth step, the Commissioner evaluates various factors to determine whether the claimant is capable of performing any other work in the economy.  If the claimant's RFC does not allow her to perform past relevant work, the burden of production shifts to the Commissioner to show the claimant maintains the RFC to perform work that exists in significant numbers in the national economy.  See Brock v. Astrue, 674 F.3d 1062, 1064 (8th Cir. 2012); 20 C.F.R. § 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, the Commissioner finds the claimant not disabled.  20 C.F.R. § 416.920(a)(4)(v).  If the claimant cannot make an adjustment to other work, the Commissioner finds the claimant disabled. Id.  In the fifth step, the burden of persuasion to prove disability remains on the claimant even though the burden of production shifts to the Commissioner.  Hensley v. Colvin, 829 F.3d 926, 932 (8th Cir. 2016).

The decision of the Commissioner must be affirmed if it is supported by substantial evidence in the record as a whole.  42 U.S.C. § 405(g); Richardson v. Perales, 402 U.S. 389, 401 (1971); Estes v. Barnhart, 275 F.3d 722, 724 (8th Cir. 2002).  Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Biestek v. Berryhill, 139 S.

Ct. 1148, 1154 (2019) (quoted case omitted).  "[T]he threshold for such evidentiary sufficiency is not

high."  Id.  Under this test, the court "consider[s] all evidence in the record, whether it supports or

detracts from the ALJ's decision."  Reece v. Colvin, 834 F.3d 904, 908 (8th Cir. 2016).  The Court

"do[es] not reweigh the evidence presented to the ALJ" and will "defer to the ALJ's determinations

regarding the credibility of testimony, as long as those determinations are supported by good reasons

and substantial evidence."  Id.  The ALJ will not be "reverse[d] merely because substantial evidence

also exists in the record that would have supported a contrary outcome, or because [the court] would

have decided the case differently."  KKC ex rel. Stoner v. Colvin, 818 F.3d 364, 370 (8th Cir. 2016)

(internal quotation marks and quoted case omitted).

**IV.  The ALJ's Decision**

In a decision dated September 4, 2019, the ALJ applied the above five-step analysis and found

that Plaintiff had not engaged in substantial gainful activity since June 14, 2017; Plaintiff has the

severe impairments of bipolar disorder, generalized anxiety disorder, emphysema, osteoarthritis of

the right subtalar joint status post-remote ankle fracture, and bilateral pes planus and flat feet; and

Plaintiff has the non-severe impairments of bronchitis, hematuria, and obesity.  The ALJ found there

was no evidence Plaintiff was diagnosed with schizoaffective disorder after the application date and

concluded it was a non-medically determinable impairment.  (Tr. 14-15).  The ALJ concluded

Plaintiff did not have an impairment or combination of impairments that meets or medically equals

the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R.

§§ 416.902(d), 416.925, and 416.926).  (Tr. 15).

The ALJ found that Plaintiff's mental impairments, considered singly and in combination, do

not meet or medically equal the criteria of listings 12.04 and 12.06.  (Tr. 15).  The ALJ found Plaintiff

has moderate limitation in understanding, remembering, or applying information (id.); moderate

limitation in interacting with others; moderate limitation in concentrating, persisting, or maintaining

pace; and moderate limitation in adapting or managing herself. (Tr. 16). As such, the "paragraph B" criteria of mental functional analysis were not satisfied. (Tr. 17). The ALJ found the "paragraph C" criteria were not present despite treatment records documenting an involuntary inpatient hospitalization and legal guardianship obtained by Plaintiff's father, based on evidence that Plaintiff's medication subsequently stabilized her condition and she was able to move into her own residence and manage her medical care without her parents' control or continuation of a highly supportive living environment. (Tr. 17).

The ALJ determined that Plaintiff has the following RFC:

> Claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except: the claimant can never climb ladders, ropes, or scaffolds. She can frequently climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. She can avoid concentrated exposure to excessive vibration and pulmonary irritants. She must avoid all exposure to workplace hazards such as operational control of moving machinery and unprotected heights. She can perform simple routine and repetitive tasks in a low stress job defined as occasional simple work-related decisions and few if any workplace changes so that the work performance would involve the same things on a day-to-day basis. Job requirements should not require public interaction, only occasional contact with coworkers but with no tandem tasks.

(Tr. 17).

At Step Four, the ALJ found that Plaintiff was unable to perform her past relevant work as a production line worker, convenience store clerk, and combination hair stylist and small business owner. (Tr. 23-24). The ALJ further found that Plaintiff was born on June 7, 1972, and on the date the application was filed she was 45 years old, which is defined as a younger individual age 18-49. (Tr. 24). Plaintiff has at least a high school education and is able to communicate in English. (Tr. 24). The AJF determined the transferability of job skills was not material to the determination of disability because using the using the Medical-Vocational Rules as a framework supported a finding that the Plaintiff was "not disabled," whether or not she has transferable job skills. (Id.)

At Step Five, relying on the testimony of the VE and considering Plaintiff's age, education, work experience, and RFC, the ALJ found there are jobs existing in significant numbers in the

national economy that Plaintiff could perform, including representative occupations such as mail sorter (Dictionary of Occupational Titles ("DOT") No. 209.687-026); photocopy machine operator (DOT No. 207.685-014); and marker II (DOT No. 920.687-126).  (Tr. 24-25).  The ALJ concluded Plaintiff was not under a disability as defined by the Act since June 14, 2017, the date the application was filed.

## V. Discussion

Plaintiff challenges the ALJ's decision as not supported by substantial evidence on the record as a whole.  (ECF No. 14 at 4).  Specifically, Plaintiff argues the ALJ's determination of her residual functional capacity (RFC) is not supported by some medical evidence.  Plaintiff states that the ALJ cited a non-examining physician's findings and concluded Plaintiff's limitations are greater, but did not articulate a rationale for failing to include in his RFC the physician's limitation to two-step commands.  Plaintiff asserts that with this limitation included in her RFC, the VE's testimony supports that there are not a substantial number of jobs available she could perform.  Plaintiff also asserts the ALJ failed to properly consider the State of Missouri's finding of required guardianship as he did not explain how the guardianship did not compel a decision that Plaintiff was incapable of making her own decisions.  Finally, Plaintiff argues the ALJ found that she could live on her own, some sixteen months after the onset date, but failed to explain how this finding reasonably leads to a conclusion she was not disabled for any twelve-month period.

### A. RFC Standard and Applicable Law

Residual functional capacity is the most a claimant can do despite his or her limitations, and includes an assessment of physical abilities and mental impairments.  Masterson v. Barnhart, 363 F.3d 731, 737 (8th Cir. 2004); 20 C.F.R. §§ 404.1545, 416.945.  The ALJ bears the primary responsibility for assessing a claimant's RFC based on all relevant, credible evidence in the record, including medical records, the observations of treating physicians and others, and the claimant's own

description of his symptoms and limitations.  Goff v. Barnhart, 421 F.3d 785, 793 (8th Cir. 2005); 20 C.F.R. §§ 404.1545(a), 416.945(a).  The RFC "'is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities[.]'"  Roberson v. Astrue, 481 F.3d 1020, 1023 (8th Cir. 2007) (quoting S.S.R. 96-8p, 1996 WL 374184, at *3 (Soc. Sec. Admin. July 2, 1996)).  To determine a claimant's RFC, the ALJ must move, analytically, from ascertaining the true extent of the claimant's impairments to determining the kind of work the claimant can still do despite her impairments.  Anderson v. Shalala, 51 F.3d. 777, 779 (8th Cir. 1995).

A claimant's "RFC determination is a 'medical question,' that 'must be supported by some medical evidence of [the claimant's] ability to function in the workplace.'"  Noerper v. Saul, 964 F.3d 738, 744 (8th Cir. 2020) (quoting Combs v. Berryhill, 878 F.3d 642, 646 (8th Cir. 2017)).  The ALJ has an independent duty to develop the record, despite the claimant's burden.  Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004) ("The ALJ must neutrally develop the facts.").  "[T]he ALJ should obtain medical evidence that addresses the claimant's 'ability to function in the workplace.'"  Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004) (quoting Nevland v. Apfel, 204 F.3d 853,858 (8th Cir. 2000).  "An ALJ's RFC assessment which is not properly informed and supported by some medical evidence in the record cannot stand."  Frederick v. Berryhill, 247 F. Supp. 3d 1014, 1021 (E.D. Mo. 2017) (citing Hutsell v. Massanari, 259 F.3d 707, 712 (8th Cir. 2001)).

The ALJ must consider the claimant's allegations when determining RFC, and must give good reasons if he questions the claimant's account of her limitations.  See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1983); 20 C.F.R. § 416.929 (discussing the process for evaluating symptoms); SSR 16-3p (evaluation of symptoms in disability claims).

For claims like Plaintiff's that are filed on or after March 27, 2017, an ALJ evaluates medical opinions and administrative medical findings pursuant to 20 C.F.R. § 404.1520c. The new regulations provide that the Social Security Administration "will not defer or give any specific evidentiary weight,

including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [Plaintiff's] medical sources." 20 C.F.R. § 404.1520c(a).  An ALJ is to evaluate the persuasiveness of medical opinions and prior administrative medical findings in light of the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant, which includes: (i) length of the treatment relationship, (ii) frequency of examinations, (iii) purpose of the treatment relationship, (iv) extent of the treatment relationship, and (v) examining relationship; (4) specialization, and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies."  20 C.F.R. § 404.1520c(a)-(c).

Under the new regulations, supportability and consistency "are the most important factors" to consider when determining the persuasiveness of a medical source's medical opinions and an ALJ must explain how he considered the factors of supportability and consistency in his decision.[4]  20 C.F.R. § 404.1520c(b)(2).   An ALJ may, but is not required to, explain how he considered the remaining factors.  Id.; see also Brian O. v. Comm'r of Soc. Sec., No. 1:19-CV-983-ATB, 2020 WL 3077009, at *4 (N.D.N.Y. June 10, 2020) (quoting 20 C.F.R. § 404.1520c(a),(b)) ("Although the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning 'weight' to a medical opinion, the ALJ must still 'articulate how he or she considered the medical opinions' and 'how persuasive he or she finds all of the medical opinions.'") (alterations omitted)).

---

[4]"Supportability" refers to the principle that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be."   20 C.F.R. §§ 404.1520c(c)(l), 416.920c(c)(l). "Consistency" refers to the principle that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be."  20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

B.   ALJ's Evaluation of Opinion and Other Evidence Regarding Plaintiff's Mental and Physical Impairments

The record contains opinion evidence from a non-examining medical consultant with disability determinations, Dr. Harry Cole, M.D., who opined on November 20, 2017, that Plaintiff did not have any severe physical impairments. (Tr. 63-68). The ALJ found this opinion unpersuasive as later medical records showed additional diagnoses of subtalar osteoarthritis, pes planus, and emphysema which caused more than minimal limitation to Plaintiff, given evidence in the record of right ankle pain and tenderness, flat feet, and coarse breath sounds with emphysema. (Tr. 22). [5]

The ALJ stated that the record also included opinions offered in the form of GAF scores ranging from 35 to 75. He stated that GAF scores are medical opinions as defined by 20 C.F.R. § 404.1527(a)(2) and 416.927(1)(2) when provided by acceptable medical sources, but did not identify the sources of the GAF scores. The ALJ stated GAF scores are of little use in assessing the severity and limiting effects of a claimant's mental impairments, because they are "not standardized or based on normative data, do not predict prognosis or treatment outcomes, do not directly correlate to the severity requirements in mental disorder listings or any specific functional limitations, and do not represent specific objective findings." (Tr. 22). The ALJ found the GAF opinions unpersuasive.

The only other opinion evidence of record comes from Raphael Smith, Psy.D., a non-examining psychological consultant with disability determinations who opined on November 28, 2017, that Plaintiff had the medically determinable impairments of severe depressive, bipolar, and related disorders, severe anxiety and obsessive-compulsive disorders, and non-severe asthma and

---

[5]Because an ALJ must determine a claimant's abilities as they exist at the time of the hearing, he cannot rely on remote evidence to determine a claimant's abilities. Frankl v. Shalala, 47 F.3d 935, 939 (8th Cir. 1995); see also Morse v. Shalala, 32 F.3d 1228, 1230-31 (8th Cir. 1994) (ALJ erred by relying on old medical report and gave no weight to subsequent supporting evidence). Accordingly, while Dr. Cole's opinion may have been consistent with the record as he reviewed it in November 2017 (Tr. 21, 68), the ALJ was required to determine Plaintiff's functional ability to perform work-related activities as of the date of the hearing, April 30, 2019.

substance addition disorders (alcohol and drugs).[6]  (Tr. 68-69).  Dr. Smith opined these impairments

caused Plaintiff moderate limitations in the domain of concentration, persistence, or pace; mild

limitations in the domain of understanding, remembering, or applying information; mild limitations

in the domain of interacting with others; and no limitation in the domain of adapting or managing

oneself.  (Tr. 69).  Dr. Smith further opined that Plaintiff has a severe mental condition which could

reasonably cause functional limitations, but she retains the ability to perform simple repetitive tasks

(Tr. 70).  He opined that Plaintiff's ability to carry out very short and simple instructions was not

significantly limited but her ability to carry out detailed instructions was moderately limited, as was

her ability to maintain attention and concentration for extended periods.  (Tr. 71).  Dr. Smith's

narrative opinion with respect to Plaintiff's sustained concentration and persistence capacities or

limitations stated:

> Claimant retains sufficient mental capacity to concentrate on, understand, and
> remember unchanging, less than four step instructions, but he/she would be impaired
> for detailed or complex instructions.  The claimant retains sufficient mental capacity
> to carry out two-step commands with adequate persistence and pace; but he/she would
> struggle with detailed or complex instructions.

(Tr. 72).

The ALJ found Dr. Smith's opinion evidence "not wholly persuasive."  (Tr. 22).  The ALJ

found the medical evidence showed Plaintiff had greater limitations in understanding, remembering,

and applying information than Dr. Smith opined, given her confusion and disorganization of thought

while hospitalized, and reports of short-term memory issues.  (Id.)  The ALJ found the treatment

records showed more than mild limitations in interacting with others given evidence of Plaintiff's

conflicts at the secure nursing facility, family conflicts, and the verbal altercation with medical staff

regarding the urine drug test.  (Id.)  The ALJ also found "clear" limitations in Plaintiff's ability to

---

[6]Dr. Smith's opinion from November 2017 was similarly remote in time from the April 30, 2019 hearing.  Again, the ALJ was required to determine Plaintiff's functional ability to perform work-related activities as of the date of the hearing, not as of seventeen months earlier.

adapt and manage herself, citing evidence of her impulsivity, marijuana use, history of noncompliance with medication, and manic phases and lability during her hospitalization and in follow-up care.

While the ALJ did not use the term "consistency" in his decision, the substance of his discussion found that Dr. Smith's opinions as to Plaintiff's limitations were not consistent with other specific medical and nonmedical evidence of record, 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2), and that Plaintiff had greater limitations than opined by Dr. Smith.

The ALJ did not address the supportability of Dr. Smith's opinions, however.  20 C.F.R. §§ 404.1520c(c)(l), 416.920c(c)(l).  Although Plaintiff does not raise the issue, this was legal error. When determining the persuasiveness of a medical source's medical opinions under the new regulations, an ALJ must explain in his decision how he considered the factors of supportability and consistency.  20 C.F.R. § 404.1520c(b)(2); see Lucus v. Saul, 960 F.3d 1066, 1069-70 (8th Cir. 2020) (remanding where ALJ discredited physician's opinion without discussing factors contemplated in regulation, as failure to comply with opinion-evaluation regulation was legal error); Bonnett v. Kijakazi, No 21-1619, __ F. App'x __, 2021 WL 4258770, at *1 (8th Cir. Sept. 20, 2021) (unpublished per curiam) (reversing for legal error under the new regulations and remanding for further consideration of treating physician's opinion where the ALJ adequately addressed the opinion's supportability but did not address whether it was consistent with other evidence of record). On remand, the ALJ must comply with the regulations' mandate that he explain his consideration of the required factors in his decision.

As previously stated, the ALJ found Plaintiff has the RFC to perform light work with the following limitations:  Plaintiff can never climb ladders, ropes, or scaffolds.  She can frequently climb ramps and stairs, balance, stoop, kneel, crouch, and crawl.  She can avoid concentrated exposure to excessive vibration and pulmonary irritants.  She must avoid all exposure to workplace hazards such as operational control of moving machinery and unprotected heights.  She can perform simple routine

and repetitive tasks in a low stress job defined as occasional simple work-related decisions and few if any workplace changes so that the work performance would involve the same things on a day-to-day basis.  Job requirements should not require public interaction, only occasional contact with coworkers but with no tandem tasks.

Plaintiff asserts that the ALJ's RFC determination is not supported by some medical evidence because he did not include the restriction present in the Dr. Smith's opinion that Plaintiff was limited to work involving two-step commands.  The Court agrees.

An ALJ need not adopt a medical opinion in its entirety, see Martise, 641 F.3d at 927, and here the ALJ was not required to accept Dr. Smith's opinion regarding the two-step command limitation.  See Winn v. Comm'r, Soc. Sec. Admin., 894 F.3d 982, 987 (8th Cir. 2018).  Even so, an ALJ must at least provide the grounds upon which he accepts or rejects portions of an opinion.  The ALJ should at least "minimally articulate his reasons for crediting or rejecting evidence of disability." Ingram v. Chater, 107 F.3d 598, 601 (8th Cir. 1997); Taylor ex rel. McKinnies v. Barnhart, 333 F.Supp.2d 846, 856 (E.D. Mo. 2004).  The ALJ failed to do so here.

The ALJ determined that Plaintiff was more restricted than Dr. Smith opined, based on other evidence in the record, but he omitted from the RFC—without discussion—a portion of Dr. Smith's opinion that appears pivotal in the disability determination.  The Court is aware that an ALJ is not required to explain all the evidence in the record.  See Wildman v. Astrue, 596 F.3d 959, 966 (8th Cir. 2010).  But he cannot pick and choose only the evidence that buttresses his conclusion.  Nelson v. Saul, 413 F.Supp.3d 886, 916 (E.D. Mo. 2019); see also McKinnies, 333 F.Supp.2d at 856 (citing Robinson v. Barnhart, 366 F.3d 1078, 1083 (10th Cir. 2004) ("The ALJ is not entitled to pick and choose from a medical opinion, using only those parts that are favorable to a finding of nondisability."); Switzer v. Heckler, 742 F.2d 382, 385-86 (7th Cir. 1984) ("[T]he Secretary's attempt

15

to use only the portions [of a report] favorable to her position, while ignoring other parts, is improper.")).

Because the ALJ did not provide a reason for rejecting Dr. Smith's opinion on the two-step command limitation—while including Dr. Smith's other opined limitations in the RFC—the Court would be required to determine in the first instance whether there was substantial evidence to support the ALJ's decision to reject that limitation.  It is not within the Court's purview to speculate why the ALJ may have rejected certain evidence.  Jones v. Chater, 65 F.3d 102, 104 (8th Cir. 1985).  While the ALJ may have considered and for valid reasons rejected the two-step command limitation of Dr. Smith's opinion, the Court is unable to determine whether any such rejection is based on substantial evidence, given the ALJ's complete failure to address it.  Id.  When an ALJ's decision is unclear as to the medical basis for his assessment of the degree to which the claimant's impairments affect her RFC, the matter must be remanded for further proceedings.  See Lauer v. Apfel, 245 F.3d 700, 704-05 (8th Cir. 2001).

Further, the ALJ's error does not appear harmless.  "An error is harmless when the claimant fails to 'provide some indication that the ALJ would have decided differently if the error had not occurred.'"  Lucus, 960 F.3d at 1069 (quoting Byes v. Astrue, 687 F.3d 913, 917 (8th Cir. 2012)).  Here, the vocational expert testified in response to questioning by Plaintiff's counsel that the effect of a limitation to two-step jobs would depend on how steps were defined.  (Tr. 57).  The VE testified that if the hypothetical was limited to SVP 1[7] or, alternatively, to reasoning 1, math 1,and language level 1 jobs, when coupled with the limit on avoiding the workplace hazards of moving machinery

_____

[7]Specific Vocation Preparation (SVP) is used to identify a job's skill level and refers to the amount of time it takes a typical person to learn the techniques, acquire the information, and develop the facility needed for average performance in a job.  See Social Security Program Operations Manual System (POMS), Quick Reference Guide for Medical and Vocational Evaluation, A.77., Specific vocational preparation (SVP), https://secure.ssa.gov/poms.nsf/lnx/0425001001#a7 (last visited Sept. 29, 2021).  An SVP 1 job requires a short demonstration only and is considered unskilled.

and a no-interaction restriction, there were not a significant number of jobs in the national economy that Plaintiff could perform. (Tr. 60-61). See Brock, 674 F.3d at 1064; 20 C.F.R. § 416.920(a)(4)(v) (if the claimant's RFC does not allow her to perform past relevant work, the burden of production shifts to the Commissioner to show the claimant maintains the RFC to perform work that exists in significant numbers in the national economy).

Because remand is required, the Court does not address all of Plaintiff's arguments.  Plaintiff's assertion, however, that the ALJ was compelled to determine she was incapable of making her own decisions because of her father's continued legal guardianship (see ECF 14 at 13) is an overstatement. Social Security disability determinations are based on Social Security law, 20 C.F.R. § 404.1504, and an ALJ is not bound by disability decisions made by other governmental or nongovernmental agencies.  Id.  Plaintiff's guardianship determination relied on the Missouri guardianship statutes' criteria rather than the Social Security disability criteria.  Medley v. Berryhill, No. 2:17-CV-88 NAB, 2019 WL 1115527, at *7 & n.6 (E.D. Mo. Mar. 11, 2019).[8]

Plaintiff is correct, however, that evidence of a disability decision by another governmental or nongovernmental agency must be considered.  SSR 06-03p, 2006 WL 2329939 at *6.  "These decisions, and the evidence used to make these decisions, may provide insight into the individual's mental and physical impairment(s) and show the degree of disability determined by these agencies based on their rules."  Id. at 7.  The ALJ acknowledged the guardianship but concluded that medical records showed Plaintiff achieved stability in her mental health impairments and became more independent in her care despite her father's continued legal guardianship.  (Tr. 23).  While this may continue to be the ALJ's conclusion on remand, he must explain such a conclusion and support it with medical evidence in the record.

---

[8]As the Court observed in Medley, a court of law is not "a government agency," but even so, the standards for finding disability under Social Security regulations and a finding of disability and incapacity under Missouri state law are different.  2019 WL 1115527, at

A review of the record as a whole shows there is no reliable medical evidence providing a basis for the ALJ's conclusion that Plaintiff can perform the requirements of light work as set out in the regulations and in the RFC determination.  An ALJ need not "in all instances obtain from medical professionals a functional description that wholly connects the dots between the severity of [a claimant's impairments] and the precise limits on a claimant's functionality.  Something, however, is needed."  Noerper, 964 F.3d at 746.  The ALJ may not simply draw his own inferences about a claimant's functional abilities from medical reports and treatment records, Combs, 878 F.3d at 646, as the ALJ did here.  Given the ALJ's failure to explain why he adopted some but not all of Dr. Smith's opinions, the Court is "unable to determine the permissibility of the Commissioner's RFC determination."  Noerper, 964 F.3d at 747.

Consequently, the Court will remand the matter to the Commissioner with instructions to develop and evaluate the record more fully in order to properly determine Plaintiff's residual functional capacity, which may include supplemental physical and mental examinations and consultation with a psychiatric expert.   In addition, Plaintiff should be afforded a reasonable opportunity to supplement the medical evidence.  Plaintiff is reminded that the ultimate burden of proving continued disability rests with her.

**VI. Conclusion**

For the reasons discussed above, the ALJ's decision is not supported by substantial evidence on the record as a whole.  The Court will therefore reverse the Commissioner's final decision and remand the case for further proceedings.  Because Plaintiff first applied for benefits in 2017 and it is now 2021, the Commissioner is urged to begin proceedings without delay and resolve this case as soon as possible.

Accordingly,

**IT IS HEREBY ORDERED** that the Clerk shall substitute Kilolo Kijakazi as the Defendant in this action pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

**IT IS FURTHER ORDERED** that the decision of the Commissioner is **REVERSED** and **REMANDED** for further proceedings consistent with this Memorandum and Order.

A separate Judgment of Remand will accompany this Memorandum and Order.



*Ronnie L. White*
_____
**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**


Dated this <u>29th</u> day of September, 2021.